UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

**FILED**

NOV 1 3 2006

CLERK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| | * | |
| ROGER D. WALDNER and DAWN M. | * | CIV. 06-4074 |
| WALDNER, Individually and d/b/a D&R | * | |
| Express, a partnership; and THE ONE | * | |
| STOP, INC., a South Dakota corporation, | * | |
| | * | |
| Plaintiffs, | * | MEMORANDUM OPINION |
| | * | AND ORDER GRANTING |
| | * | MOTION TO DISMISS |
| -vs- | * | |
| | * | |
| TIMOTHY R. BUSH; and BANK OF | * | |
| THE WEST, f/k/a Community First | * | |
| National Bank, f/k/a Community | * | |
| First State Bank, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending is Defendant Bank of the West's Motion to Dismiss (Doc. 12). Defendant Timothy

R. Bush joined in the motion to dismiss (Doc. 18).

## BACKGROUND

Roger and Dawn Waldner d/b/a D&R Express and The One Stop, Inc. (Waldners) sued

Timothy Bush (Bush) and Bank of the West f/k/a Community First National Bank f/k/a Community

First State Bank (Bank) in Circuit Court, Third Judicial Circuit, Beadle County, South Dakota (Doc.

1). Waldners alleged Bush, a resident of Minnesota, "at all times material was the agent" of the

Bank. Waldners allege Bush acted "within the scope of his employment" which subjected the Bank

"to vicarious liability for the acts and omissions of its agent and employee, Bush." Additional

allegations are that Waldners (1) borrowed $150,000 from the Bank; (2) mortgaged to the Bank real

property which included a convenience store; (3) leased the convenience store to Cynthia Martin

(Martin); (4) loaned money to Martin for operating expenses; (5) used the income from the lease to

pay their loan to the Bank; (6) were solicited by Bush before and during the lease with Martin to

relinquish the convenience store to the Bank in consideration for forgiveness of their indebtedness

1

to the Bank; (7) were victimized when Bush, a 20% owner in One Stop, forged a stock sale contract for Roger Waldner to purchase Bush's shares of stock; (8) were further victimized when Bush used the forged stock sale contract to demonstrate a false account receivable to entice a different lender to advance money to Bush and when Bush contemporaneously disclosed false financial information about Roger Waldner; (9) were further victimized when Bush engaged in a course of conduct designed to disrupt and interfere with the lease between Waldners and Martin; (10) were further victimized as a result of Bush's conduct which caused Martin's convenience store to lose business and caused her to stop operating the store, to file for bankruptcy and to stop making the lease payments to Waldners, which in turn left Waldners without income to make monthly payments against their loan with the Bank; (11) were foreclosed upon by the bank resulting in a judgment against them in the amount of $166,457, which in turn caused the subsequent sheriff's sale of the convenience store despite Waldners having secured a private sale of the premises for an amount far in excess of the amount of the judgment, and (12) lost the difference between the amount of the sheriff's sale and the amount of the private sale they had arranged for the actual value of the convenience store. Waldners assert seven different legal theories based on these factual allegations to claim compensatory and punitive damages.

The Bank removed the case from state court to federal court (Doc. 1). Bush consented to removal (Doc. 6). The Bank answered the complaint and admitted Bush is a resident of Minnesota, that he is "employed presently" with the Bank, but denied that Bush was "at all times material" the agent of the Bank, asserting that part of Bush's conduct mentioned in Waldners' complaint occurred before Bush was employed by the Bank. The Bank also alleges that "certain of the allegations of the Complaint relate to conduct . . . outside the scope of employment." The Bank asserts as a defense that "Plaintiffs' Complaint is barred for failure to have brought a compulsory counterclaim in the foreclosure action," among other defenses.

The Bank moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. 12). The Bank's supporting briefs advance the compulsory counterclaim argument to support the motion to dismiss (Docs. 13 & 22).

Bush's answer to the complaint admits he is a resident of Minnesota and that "he acted as an agent" of the Bank (Doc. 8). Bush admits the Bank foreclosed upon Waldners' mortgage, but

2

asserts Waldners' claims in this lawsuit are barred by the compulsory counterclaim rule which required Waldners to assert their claims in the foreclosure action, among other defenses. Bush also asserts a counterclaim against Roger Waldner for money Bush loaned to Roger Waldner to purchase a different convenience store from the one mentioned in Waldners' complaint. Bush joins the Bank's motion to dismiss and "all supporting filings provided by it." (Doc. 18).

**The Bank's Position**

Relying upon SDCL §15-6-13(a), the Bank urges Waldners' factual allegations in this lawsuit were required to be asserted as counterclaims in the foreclosure action. Because Waldners did not assert these claims as a counterclaim in the foreclosure action, the Bank maintains Waldners' claims are barred. The dates of Bush's conduct identified by Waldners in their complaint pre-dates the foreclosure action. The Bank suggests that among the four factors to be considered to determine whether Waldners' claims in this suit arise out of the same transaction or occurrence as the foreclosure is the logical relation between the Bank's foreclosure claim against the Waldners and Waldners' claims against the Bank. If there is a logical relationship, Waldners' claims should have been asserted as counterclaims and cannot be asserted in this lawsuit after the foreclosure action has been completed. Olawsky v. Clausen, 212 N.W.2d 653 (S.D. 1973).

The Bank urges that the conduct which Waldners attribute to Bush in their complaint in this lawsuit reveals Bush's conduct to be related to the Bank's $150,000.00 loan to the Waldners— matters obviously logically related to the foreclosure action. The Bank urges the compulsory counterclaim rule applies to Waldners' claims against Bush, an unnamed party to the first lawsuit, if the Waldners' opposing party in the first lawsuit (Bank) and Bush were in privity— so closely identified with a named party as to qualify as an "opposing party." The Bank cites various precedent that a principal and agent are in privity for purposes of the compulsory counterclaim law. The Bank argues privity exists between it and Bush because Waldners have alleged Bush was the Bank's agent. Waldners are precluded, therefore, from suing Bush independently if Waldners' claims against Bush's employer (the Bank) are barred.

**Bush's Position.**

Bush joined in the brief filed by the Bank. In his reply brief, Bush argues Waldners cannot claim he was not the Bank's agent because they are bound by their pleadings in which they allege

3

he was the Bank's agent. Because the agency relationship establishes privity between the Bank and Bush, Waldners' claims against him in this lawsuit should have been made as counterclaims in the foreclosure action and are now barred. Bush points out the dates alleged in Waldners' complaint are from October, 2002 through July, 2003. The foreclosure action was commenced on November 25, 2003 and judgment entered on April 13, 2004. The conduct about which Waldners complain in this lawsuit was obviously known to Waldners before and during the foreclosure action. Waldners' argument that their cause of action had not matured because the extent of their damages was not ascertainable until after the foreclosure action was completed has been rejected by the South Dakota Supreme Court. Haberer v. First Bank of South Dakota, 429 N.W.2d 62 (S.D. 1988).

### Waldners' Position

The Walders assert Bush was not a party to the foreclosure action, so the compulsory counterclaim law does not apply. They also assert Bush's conduct was personally motivated and performed in his personal capacity to net a financial gain personal to him– a personal interest in the convenience store. Waldners urge Bush's acts were not complete, so the cause of action had not fully accrued while the foreclosure action was pending. Bush's counterclaim is based on a forged document created by Bush on May 1, 2002. His assertion of his counterclaim in this lawsuit is evidence of his improper conduct which continues "in this very lawsuit." Waldners were unaware of the extent of Bush's conduct before the foreclosure action was finished. Waldners acknowledge defendants have correctly identified the factors to be considered to decide whether a claim must be asserted as a compulsory counterclaim. Waldners urge the factors have not been met "given the improper conduct of Defendants toward Plaintiffs and the apparent scheme to injure Plaintiffs as described in the Affidavit of Plaintiff, Roger Waldner" (Doc. 20). The Affidavit says "Bush may have intended to gain a 50% interest in the Huron convenience store . . .but due to Bush being transferred to Minnesota he eventually released his anticipated interest. . . .    All sums due and owing pursuant to the original Contract to Purchase Stock were paid in full prior to Bush's forgery in May 1, 2002 and no additional sums were advanced by Bush to Affiant to create or suggest a loan. . . . Affiant did not learn of or obtain copies of Bush's forged document until a period well after the conclusion of the underlying foreclosure action. It was not until the foreclosure action was complete that I, and through me the other Plaintiffs, became aware of the complete nature and extent of Bush's

4

plan as the conduct was ongoing well after the foreclosure action was complete and continues with Bush's false claims in this lawsuit." (Internal reference to exhibits omitted).

## DISCUSSION

Generally only plaintiffs' complaint is considered when a Rule 12(b)(6) motion to dismiss challenges plaintiffs' claims. In response to the motion to dismiss Waldners have filed an affidavit. The Bank suggests the motion to dismiss does not need to be converted to a motion for summary judgment as a result of Roger Waldner's affidavit because the affidavit merely re-states and amplifies facts which are already alleged in the complaint. Rule 12(b)(6) motions to dismiss are not automatically converted to summary judgment motions as a result of one party's submission of additional matters in opposition or in support of the motion. Casazza v. Kiser, 313 F.3d 414, 417-418 (8th Cir. 2002). The motion will be considered as a 12(b)(6) motion without converting the motion to a summary judgment motion despite the affidavit filed by Roger Waldner. The affidavit has not been considered for purposes of the motion to dismiss.

The allegations in the complaint are accepted as true and construed liberally in favor of plaintiffs when considering a 12(b)(6) motion. Booker v. City of St. Louis, 309 F.3d 464, 467 (8th Cir. 2002). South Dakota law governs because the foreclosure action was filed, considered, and judgment was entered in the state courts for South Dakota (Doc. 15). Bankcard Systems, Inc. v. Miller/Overfelt, Inc., 219 F.3d 770 (8th Cir. 2000). Taking judicial notice, pursuant to Federal Rule of Evidence 201, of the state court foreclosure proceeding for the purposes of confirming its existence, the date litigation was commenced, and the date judgment was entered does not require converting this 12(b)(6) motion to a summary judgment motion. State ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999).

"A pleading *shall state* as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." SDCL §15-6-13(a) (emphasis added). "The purpose of the compulsory counterclaim statute, SDCL §15-6-13 is to reduce the volume of litigation and promote the just, speedy, and inexpensive determination of controversies by barring relitigation of the same set of facts. " Haberer v. First Bank of South

5

Dakota, 429 N.W.2d 62, 66 (S.D. 1988)(internal quotations and citations omitted). The existence of a logical relationship between the claim and the counterclaim renders the counterclaim compulsory. Olawsky v. Clausen, 212 N.W.2d 653, 655 (S.D 1973). The objective of the rule of compulsory counterclaims is that all logically related disputes between the parties should be resolved in a single lawsuit. Id.

The facts pled in Waldners' complaint are logically related to the Bank's foreclosure action. Walders allege the following facts in their Complaint: They borrowed money from the Bank and signed a promissory note. They gave a mortgage to the Bank to secure the note. They used the money from the loan to finance a real estate venture. The venture involved the lease of a convenience store to a third person to whom they loaned money for operating expenses. They used the income from the lease to pay their loan to the Bank. They were solicited by Bush before and during the lease to relinquish the convenience store to the Bank in consideration for forgiveness of their indebtedness to the Bank. They were victimized when Bush engaged in a course of conduct designed to disrupt and interfere with the lease between them and their lessee. They were further victimized as a result of Bush's conduct which caused the convenience store to lose business and caused the lessee to stop operating the store, to file for bankruptcy and to stop making the lease payments , which in turn left the Waldners without income to make monthly payments on their loan with the Bank. As a consequence, Waldners were foreclosed upon by the Bank resulting in a judgment against them in the amount of $166,457. The foreclosure caused the subsequent sheriff's sale of the convenience store despite Waldners having secured a private sale of the premises for an amount far in excess of the amount of the judgment. They lost the difference between the amount of the sheriff's sale and the amount of the private sale they had arranged for the actual value of the convenience store, which they claim as damages in this lawsuit.

The subjects of the foreclosure action were the defaulted Waldner promissory note in favor of the Bank and the mortgage given by the Waldners to the Bank. The subject of this lawsuit is the course of conduct of the Bank's manager while he was trying to collect the defaulted loan. Waldners' claims in this lawsuit against are therefore logically, closely, and clearly related to the Bank's lawsuit to foreclose on the defaulted loan. Waldners' claims in this lawsuit were compulsory counterclaims. SDCL §15-6-13(a) required Waldners to assert these claims in the foreclosure

6

action. Waldners did not. Waldners' claims against the Bank are barred from being asserted in a second, separate lawsuit. This conclusion is possible despite the Bank's denial that Bush was their agent for all matters alleged in plaintiffs' complaint. Waldners pled in their complaint that "at all times material [Bush] was the agent" of the Bank and acted "within the scope of his employment." The law requires plaintiffs' allegations to be accepted as true. The acts attributed to Bush, imputed to his principal the Bank, occurred before the foreclosure action was commenced and finished.

Bush was not a party to the foreclosure action. According to the allegations in the Waldners' complaint, however, Bush was the Bank's agent acting within the scope of his employment during the time he was engaged in the course of conduct alleged in this lawsuit. For purposes of *res judicata*, the close relative of compulsory counterclaims in this discussion, privity exists between an employee and employer. Russell v. SunAmerica Securities, Inc., 962 F.2d 1169, 1174 (5th Cir. 1992). An "opposing party" for purposes of the compulsory counterclaim law includes an unnamed party who is in privity with the opposing party in the first lawsuit. Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc., 292 F.3d 384, 392-93 (3rd Cir. 2002). Bush, the Bank's employee and agent, acting within the scope of his employment, was in privity with the Bank for matters connected to the Waldner loan. Bush, therefore, was an "opposing party" within the meaning of the compulsory counterclaim law.        Waldners allege in their complaint that Bush's course of conduct began during October 2002 and continued through July 2003. They also allege in their complaint that the Bank's foreclosure action was commenced in November 2003, after Bush's conduct was known.

> The rule is that a counterclaim must be in actual existence at the time the original action is filed. A matured counterclaim is a claim which has accrued to the pleader: that is to say, when the right to sue arises. In all events, a claim accrues and limitations become its course when a person has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him.

Haberer v. First Bank of South Dakota, 429 N.W.2d at 68 (S.D. 1988)(internal quotations and citations omitted).

Waldners maintain their claim had not matured either by the time the foreclosure action was commenced or by the time it was finished. Haberer addresses that argument as well:

7

Haberers contend, however, that they had not incurred a legal wrong which would result in damages. This argument is without merit. As was noted in Myers, . . .

> The guarantors do not argue that they did not know they were not aware of the several wrongs [they now seek to redress] at the time they were obliged to plead to the Platte County action, but only that the full extent of the damage was not capable of ascertainment until the three litigations had run their course--and hence those several claims were not yet mature. Ascertainment, however, refers to the fact of damage, rather than to the precise amount. The several claims--misrepresentation, outrageous conduct, abuse of process and prima facie tort--all rest on allegations of wrong and injury known to the guarantors even before their several duty to plead arose.

> Similarly, in the case at hand, the Haberers knew of all the transactions that occurred with the Bank. At the very least, assuming their complaints should be true, they had suffered at least nominal damages at the time of the first action. Therefore, we conclude Haberers' claim was mature at the time the first action was filed.

Haberer, 429 N.W.2d at 68, quoting Myers v. Clayco State Bank, 687 S.W.2d 256, 263 (Mo.App. 1985) (internal citations and quotations omitted).

The same is true here. Waldners knew of all the transactions that occurred with the Bank and Bush before the Bank commenced the foreclosure action. Their attempt to escape the consequences of that knowledge by arguing the claim had not matured because the damages were not completely ascertainable fails. The fact of injury (damage) was known to them before the foreclosure action was commenced. That the extent of the injury might not have been ascertainable does not excuse the failure to file the compulsory counterclaim in the foreclosure action. Because the claims asserted by Waldners in their complaint were required to be asserted as compulsory counterclaims in the Bank's foreclosure action, Defendants' motions to dismiss must be granted.

## CONCLUSION

Plaintiffs' complaint will be dismissed in its entirety with prejudice because the claims in the complaint are barred by the compulsory counterclaim law, SDCL § 15-6-13(a). The action was removed from state court to federal court by the Bank with the consent of defendant Bush. Bush

counterclaimed against the plaintiffs after the case was removed.  No motions are pending which address Bush's counterclaim against the Waldners.  Bush's counterclaim is not addressed by this opinion.

Both Bush and the Bank have requested that this case be remanded to state court for disposition of the counterclaim in the event the Walders' complaint is dismissed.  A remand to state court, however, is appropriate only in very limited circumstances.  See 28 U.S.C. § 1447(c).  A motion to remand must be made within thirty (30) days after the filing of removal.  Otherwise, the court may remand the case if "at any time it appears the district court lacks subject matter jurisdiction."

At first blush it appears the court no longer has subject matter jurisdiction because the Waldners' claims satisfied the jurisdictional amount to bring this diversity action within the subject matter jurisdiction of the court pursuant to 28 U.S.C. § 1332, but the remaining state-law counterclaim, standing alone,  does not.   However, "once a case that has been initiated in state court has been removed properly, subsequent events that reduce the amount recoverable . . . will not defeat the federal court's subject matter jurisdiction."  See 14C Wright, Miller & Cooper, Federal Practice and Procedure 3d § 3725, p. 115; Purple Passion, Inc. v. RCN Telecom Services, Inc., 406 F. Supp.2d 245, 246 (S.D.N.Y. 2005(gathering cases and authority).  Once the claim providing the jurisdictional amount has been dismissed, however, the Court's review of any remaining purely state-law claims is discretionary.  Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); 28 U.S.C. § 1367(c).  "Hence, a reduction in the amount in controversy below the [jurisdictional limit] simply does not affect the existence of *discretion* to either retain or dismiss the remaining claims."  Id. (emphasis added).

Factors to be weighed  in deciding whether to retain or dismiss the remaining claims are the convenience and fairness to both parties, as well as the interests of judicial economy.  Whether the action would be barred by the state statute of limitations, and the amount of time and energy already expended in federal court should also be considered. Shanaghan,  Id.  In this case, although Defendant Bush asserts in his counterclaim that he loaned Roger Waldner money to purchase a separate convenience store in Redfield, South Dakota, he does not specify when the loan was made or when the payments were due–only that Waldner has allegedly failed/refused to make payment and

the amount owing as of March 31, 2006 was $27,691.84.   The Defendants immediately made their motions to dismiss after the answer and  counterclaim  were filed, so there has been no significant time or energy expended on the counterclaim in federal court. The convenience and fairness to the parties, therefore, will  not be affected by dismissal of the counterclaim without prejudice.

Because Waldners' claims have been dismissed, supplemental  jurisdiction over the lone remaining state-law issue, Bush's counterclaim, is declined pursuant to 28 U.S.C. § 1367(c).  A Judgment will be entered dismissing Waldners' complaint in its entirety  with prejudice and dismissing  Bush's counterclaim against the Waldners without prejudice.

## ORDER

Based on the above, it is hereby

ORDERED that:

1.     Defendant Bank of the West's motion for judicial notice of Beadle County file (Doc. 15) is GRANTED.

2.     Defendants' motions to dismiss (Docs. 12  & 18) are GRANTED.

3.     Defendant Bush's Counterclaim against Plaintiff Roger Waldner is DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c).

Dated this __13th__ day of November 2006.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, Clerk

By_____Deputy